IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RYAN S. HUNTLEY,

Plaintiff,

vs.

WATTS ELECTRIC COMPANY,

Defendant.

4:21-CV-3002

MEMORANDUM AND ORDER

Watts Electric Company, the defendant, ended its employment of Ryan Huntley because, according to Watts Electric, he failed to complete a physical assessment that was a condition of employment and his back condition made it unsafe for him to do the job. Huntley claims that Watts Electric's rationale was actually a pretext for disability discrimination and that Watts Electric violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101. *et seq*.[1]

This matter is before the Court on a motion for summary judgment (filing 41) filed by Watts Electric, asserting that Huntley cannot establish a prima facie disability discrimination claim or a failure to accommodate claim. The Court finds that Huntley presents genuine issues of material fact regarding his claim of disability discrimination but fails to produce evidence on which the jury could reasonably find that Watts Electric failed to accommodate a disability. Accordingly, the Court will grant Watts Electric's motion for summary judgment in part and deny it in part.

---

[1] Huntley also alleges violations of the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1104, but those claims are coextensive with Huntley's ADA claims, and need not be addressed separately. *See Rehrs v. Iams Co.,* 486 F.3d 353, 356 (8th Cir. 2007).

BACKGROUND

Huntley served in the United States Army from 2007 to 2015, and during that time he began to suffer from chronic lower back pain caused by his military service. Filing 47-12 at 1. A military physician began treating his back pain with various therapies and medications, until he was honorably discharged and started receiving medical care from the Veterans Administration. Filing 47-12 at 1. Huntley was experiencing pain and left leg numbness so received an MRI that showed lumbar degenerative disease in his lower back. Filing 47-2 at 26. He began taking duloxetine for the pain and numbness. Filing 47-2 at 26. Huntley testified that he has never been placed under any medical restrictions due to his back condition. Filing 47-2 at 20.

Huntley attended Metropolitan Community College, where he earned a utility line degree and a welding degree. Filing 47-2 at 19. As the last requirement of his degree program, he worked as an apprentice lineman for Elkhorn Rural Public Power District. Filing 47-12 at 2. According to Huntley, he performed all the duties of a lineman at the internship, including lifting heavy tools, climbing poles, and continuous standing, without accommodations. Filing 47-12 at 2. Toward the end of his internship, Huntley applied for employment at Watts Electric. Filing 47-2 at 33.

Huntley interviewed with Watts Electric and was offered the apprentice lineman position. Filing 47-2 at 39. Watts Electric outlined the essential duties of the apprentice lineman position extensively in a document, including the ability to "climb poles to a height of 75 feet, . . . frequently lift or move up to 50 pounds and occasionally lift and or move more than 100 pounds." Filing 43-1 at 59-60. The apprentice lineman position also requires a Nebraska State Electrical License, a commercial driver's license, and a current physical card. Filing 43-1 at 59.

- 2 -

Huntley accepted the position and Watts Electric notified him of his new hire orientation that would "include a drug screening and pre-employment physical." Filing 43-1 at 48. He reported to the job site that day and completed his drug screen and pre-employment physical at Concentra. Filing 43-1 at 5. For the medical exam, Huntley completed a health history form. On his health history form, he disclosed that he had or has "bone, muscle, joint, or nerve problems" and "L4-L5 chronic pain." Filing 43-1 at 52. He also disclosed that he was currently taking duloxetine. Filing 43-1 at 51.

Linda Corr, PA-C, performed a medical exam on Huntley. Corr reported that Huntley had "spondylitis from weightlifting treated with duloxetine daily x 6 months, no side effects-no limitations," but that all of Huntley's body systems were normal. Filing 47-2 at 67. Corr then determined that Huntley "meets standards, but periodic monitoring required" due to his medication, and gave him a medical card for one year rather than the standard two-year card. Filing 47-2 at 68. Corr reported that a one-year card is standard for a drug from duloxetine's class of drugs. Filing 43-1 at 36.

Corr testified that she told Huntley that, because of his condition and medication, he would need to get a doctor's note in order to complete the additional physical assessment. Filing 43-1 at 41. Kylie Fallick (the EEO officer, HR director, and an owner of Watts Electric) and Dave Watts (founder and owner of Watts Electric) both testified that Watts Electric requires a physical assessment, with standards outlined according to the job description, for all of their field personnel. Filing 43-1 at 21, 31. Huntley, on the other hand, testified that he had not been informed by Corr nor anyone else from Watts Electric that he needed a release from a doctor or additional physical testing, nor had he been given anything in writing stating he needed a release from a doctor or additional physical testing. Filing 47-12 at 4. Huntley received the

- 3 -

Watts Electric Employee Handbook which outlined pre-work physical screening that includes drug testing and physical screening, similar to the new hire orientation email which stated he would complete drug screening and a pre-employment physical. Filing 47-5 at 30, Filing 43-1 at 5.

Following the exam, Huntley brought his one-year medical card to Watts Electric and began working. Filing 47-12 at 4. Fallick and Watts both testified that because it may take a week to get the medical screening results, it is common that employees begin work immediately after passing the physical and background check. Filing 43-1 at 30. Huntley testified that while working in the field the next day, he received a call from Watts asking why he was only issued a one-year medical card. Filing 47-12 at 4. According to Huntley, he discussed his back injury and medication with Watts, who never mentioned a failure or refusal to take a physical assessment. Filing 47-12 at 4. Watts does not recall this call and says he never discussed Huntley's one-year card with him. Filing 47-4 at 22.

A few days later, Fallick called Huntley. Fallick said she called him to tell him that he needed to complete the additional physical assessment. Filing 43-1 at 15. According to Fallick, she told him that Concentra informed her that he needed a medical note for the physical assessment, and he refused because he did not think he would pass. Filing 43-1 at 18. She testified that he mentioned his pain and medication, not his exact condition, and he said that some days his pain is so bad he can't get off the couch. Filing 43-1 at 18. She also said that she discussed the job description and her concern of injury and further pain if he wasn't cleared by a doctor. Filing 43-1 at 18. Alternatively, Huntley's testimony is that Fallick said she had spoken with Watts and others, and they did not think it was in his or their best interest to continue his employment. Filing 43-1 at 7. Huntley also testified that he told Fallick he

- 4 -

could put her in contact with his doctors at the VA to prove that he was capable of doing the job, but she said they had already discussed it with a doctor. Filing 43-1 at 7.

Huntley and Fallick agree that Fallick ended Huntley's employment on that call. But Fallick says it was because Huntley refused to get a doctor's note and complete the physical assessment, while Huntley says Fallick told him it wasn't in his best interest to continue employment. Filing 43-1 at 18.

Fallick additionally testified that she mentioned other jobs for Huntley, but he did not want to discuss any other opportunities outside of the lineman position because he wanted to use his degree. Filing 43-1 at 19. Huntley, however, said that Fallick did not mention any other job opportunities at Watts Electric. Filing 43-1 at 7.

According to Fallick, after the call, she informed Toni Watts-McDonald (operations manager and owner of Watts Electric) and Watts of the situation, and they agreed with the decision. Filing 43-1 at 19. After Fallick discussed the situation with Watts-McDonald, Watts-McDonald sent an email to Huntley suggesting other careers he could pursue through Metropolitan Community College and his GI Bill benefits that would be less dangerous with his "medical challenges." Filing 47-2 at 63.

Huntley then filed this case (filing 1-1) against Watts Electric claiming disability discrimination under the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.*, and Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Huntley alleges that Watts Electric discriminated against him because of his disability and failed to accommodate his disability in violation of the NFEPA and ADA. Filing 1-1. Watts Electric moves for summary judgment on both claims, arguing that Huntley cannot

establish a prima facie case for discrimination or a failure to accommodate claim. Filing 42.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. An employer discriminates against an employee if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. *Dick v. Dickinson State Univ.,* 826 F.3d 1054, 1059 (8th Cir. 2016).

If a party alleges a claim of discriminatory disparate treatment, the burden-shifting framework of *McDonnell Douglas* applies. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff initially has the burden to establish each element of a prima facie case of disability discrimination. *Fenney v. Dakota, Minn. & E. R.R. Co.,* 327 F.3d 707, 711 (8th Cir. 2003). The employer must then provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer provides a nondiscriminatory reason, the burden of production shifts back to the employee to show the employer's reason is pretextual. *Id.* On a motion for summary judgment, an employee only must show a genuine issue of material fact at any step of the analysis to defeat the motion. *Riley v. Lance,* 518 F.3d 996, 1000 (8th Cir. 2008).

## DISABILITY DISCRIMINATION

To establish a prima facie case of disability discrimination, a plaintiff must show: (1) that he was disabled, (2) that he was qualified to do the essential job functions with or without reasonable accommodation, and (3) that he suffered an adverse action due to his disability. *Fenney,* 327 F.3d at 711-12. Here, the parties do not dispute that there was an adverse action. The parties

do disagree on whether Huntley satisfies the other elements, and the reason for the adverse action.

A person has a disability if they (1) have "a physical or mental impairment that substantially limits one or more major life activities," (2) "have a record of such impairment," or (3) are "regarded as having such an impairment." 42 U.S.C. § 12102(1). The operation of a major bodily function is considered a major life activity. § 12102(2). A person is "regarded as having such an impairment" if they are subject to a prohibited action because of an "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12101(3).

Watts Electric suggests that Huntley fails to show he was disabled or regarded as disabled under the ADA because their perception that he may not be able to perform a certain job doesn't mean they perceived him to have a disability that limited a major life activity. Filing 42 at 13. However, Watts Electric does not address whether Huntley had an actual impairment, and Huntley presents evidence that Watts Electric also perceived that his condition would limit his overall quality of life and his capacity to work as a lineman, and thus regarded him as having a disability.

Huntley reported on his medical report and during his medical exam that he had chronic back pain and spondylitis that was being treated with medication. Filing 43-1 at 52. Spondylitis is often used interchangeably with degenerative back disease or chronic lower back condition. Filing 43-1 at 73. Huntley testified that the condition resulted in back pain and numbness in his leg. Filing 47-2 at 11. Thus, his condition impacted his musculoskeletal system, although his medication reduced the impairment and he still completed similar lineman work in the past. However, the "determination of whether an impairment substantially limits a major life activity shall be made without

regard to the ameliorative effects of mitigating measures such as . . . medication." § 12102(4)(E)(i)(I).

Additionally, there is evidence that Watts Electric regarded Huntley as having a disability. To be regarded as having a disability, Huntley would have to show either that Watts Electric (1) "mistakenly believed that he had a physical impairment that substantially limited a major life activity," or (2) "mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999). The Court assumes that working is a major life activity. *Kellogg v. Union Pacific R. Co.,* 233 F.3d 1083, 1087 (8th Cir. 2000). In this case, even if Huntley's back condition was not an actual impairment, the evidence suggests that Watts Electric believed that his condition substantially limited his capacity to work.

After Fallick was notified that Huntley only received a one-year medical card rather than a two-year card, Fallick called Huntley to discuss next steps. While the extent of the phone conversation is disputed, Fallick testified that they discussed a previous injury, his pain, and how pain could affect the job description, and Huntley testified that they discussed the stress that the job could put on his body. Filing 43-1 at 7, 18. Both parties agree that Fallick mentioned his chronic pain and how that could affect his life and work. Additionally, Watts-McDonald, in an email to Huntley, referred to his "medical challenges" and risk of injury affecting his quality of life. Filing 43-1 at 49. Fallick also stated that Watts Electric determined Huntley was "not physically capable of performing this position" in a letter to Omaha Orthopedic. Filing 47-11 at 2. Whether or not Huntley's physical impairment actually substantially limits one or more major life activities, there is evidence that Watts Electric perceived that his condition could be an impairment to his quality of life or

potentially cause him further injury and thus regarded him as having a disability. *See Kellogg,* 233 F.3d at 1083.

In sum, genuine issues of material fact exist as to whether Huntley had a disability that substantially limited a major life activity and as to whether Watts Electric regarded him as having a disability.

There are also genuine issues of material fact as to whether Huntley was a qualified person with a disability. A person is qualified within the meaning of the ADA if they (1) possess the requisite skill, education, experience, and training for his position, and (2) are able to perform the essential job functions, with or without reasonable accommodation. *Brannon v. Luco Mop Co.,* 521 F.3d 843, 848 (8th Cir. 2008). Although an employee retains the ultimate burden of persuading the trier of fact that he or she can perform the essential functions of a position, much of the information which determines those essential functions lies uniquely with the employer. *Kallail v. Alliant Energy Corp. Servs., Inc.,* 691 F.3d 925, 930 (8th Cir. 2012). Here, Huntley was hired by Watts Electric presumably based on his requisite skills, education, experience, and training, so his classification as a qualified individual turns on his ability to perform the essential job functions. Filing 43-1 at 4.

In determining whether a job function is essential, the Court must consider, among other evidence:

> (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past

incumbents on the job; and/or (vii) the current work experience of incumbents in similar jobs.

*Kallail,* 691 F.3d at 930 (citing 29 C.F.R. § 1630.2(n)(3)). Watts Electric outlined the essential functions in a document that contained the job description, and Fallick also testified to emphasizing essential functions, such as climbing poles, using 100-pound tools, and working long durations on uneven ground, in her conversation with Huntley. Filing 47-7 at 16, Filing 43-1 at 18. The essential functions of the job are not disputed—rather, the parties disagree about Huntley's capacity to perform them.

Huntley previously worked as an apprentice lineman for 12 weeks for another company, where Huntley said he performed all the duties of a lineman including lifting heavy tools, climbing poles, and continuous standing and walking. Filing 47-12 at 2. Huntley also worked for a period of time with Watts Electric before their separation. Filing 43-1 at 6. As long as no evidence suggests deteriorated capabilities, an individual can rely on past performance to show ability to perform essential job functions. *Land v. Washington Cnty., Minn.,* 243 F.3d 1093 (8th Cir. 2001). Huntley also testified that he spoke to his doctors regarding his work as a lineman, who confirmed that as long as he was physically able to do the work, he would not be restricted from doing so. Filing 43-1 at 7. Huntley's evidence of his past work and experience creates a genuine issue of material fact regarding his ability to perform the essential job functions.

When the facts are viewed in the light most favorable to Huntley, a jury could conceivably find that he establishes all the elements of a prima facie case of discrimination. Thus, the burden then shifts to Watts Electric to show a nondiscriminatory reason for its actions. *See Fenney,* 327 F.3d at 711. Watts Electric offered two reasons for ending its employment of Huntley: (1) his

safety, and (2) his failure to complete the physical examination. Filing 42 at 14, Filing 43-1 at 21. Watts Electric's witnesses testified that Huntley's employment was contingent upon his completion of the pre-employment physical examination, and he failed to complete it, so they were unsure if he was a risk to himself on the job. Filing 43-1 at 18.

Because Watts Electric provided two nondiscriminatory reasons for the separation, Huntley must then show Watts Electric's reasons were pretextual. *See Fenney,* 327 F.3d at 711. At this stage of analysis, Huntley is not required to disprove Watts Electric's reasons for separating from him. *See Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874. Huntley only must show a genuine issue of material fact as to whether their separation for safety reasons and failure to complete a physical examination were pretexts for disability discrimination. *See Riley,* 518 F.3d at 1000. Huntley claims that both of those reasons for their separation are pretextual because (1) Watts Electric fails to provide any evidence that he would be a direct safety threat, and (2) he could not have "failed" to complete the examination because he was not even informed that it was a requirement for employment. Filing 46 at 34.

The ADA allows for a defense to a charge of discrimination if an employer can show that the employee would "pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). This may include if an individual poses a threat to their own health or safety. *Chevron U.S.A. Inc. v. Echazabal,* 536 U.S. 73, 78-79 (2002). A direct threat evaluation requires "an individual assessment of the individual's ability to perform safely the essential functions of the job." 29 C.F.R. § 1630.2(r).

Watts Electric provided reports written by Corr and Dr. Peter Cimino nearly two months after the company separated from Huntley, evaluating the compatibility of his condition with employment as a lineman. Filing 43-1 at 66-

74. Corr, who had evaluated Huntley, stated that she would not recommend someone with Huntley's condition for the position. Filing 43-1 at 68. Dr. Cimino, who never evaluated Huntley personally, stated that someone with Huntley's condition would be a very high-risk hire. Filing 43-1 at 73. However, Corr reported a "normal" medical exam for all body systems at the time and testified that she could not determine if Huntley was unfit for the job without the additional physical evaluation. Filing 47-6 at 31, Filing 43-1 at 41. Additionally, those two additional reports were not available to Watts Electric until after the separation. Although a direct threat to the safety of Huntley may be a nondiscriminatory reason for ending the employment, genuine issues of material fact exist regarding whether the safety concerns were merely pretext for disability discrimination.

Huntley additionally presented evidence to create a genuine issue regarding whether Watts Electric ended his employment because he failed to complete a condition of employment, or whether it was pretextual because there is no written record of that requirement and they never informed him he needed to complete it for employment. Filing 46 at 34. Fallick testified that she informed Huntley that he needed to get a doctor's note to complete the physical assessment and that Huntley refused, and that after his refusal she informed him that she could not have him on the crew. Filing 43-1 at 18. Corr testified that after her initial medical evaluation she verbally informed Huntley that he needed to get a doctor's note to complete the physical assessment. Filing 43-1 at 41. However, there is no documentation of the need for a doctor's note or the physical assessment from Corr or Fallick, to each other or to Huntley. And Huntley testified that neither Corr nor Fallick mentioned the doctor's note or physical assessment to him, but rather that he offered to put them in contact with his doctors at the VA after they expressed concern over his condition

- 13 -

(although he never followed up on providing any documentation from doctors). Filing 47-2 at 10.

The Watts Electric employee handbook explains that lineman must "complete both the drug testing and physical screening" and goes on to say lineman "must receive an un-restricted medical card and a passing score from the pre-work screening." Filing 47-2 at 44. Further, an email from a member of the Watts Electric Team to Huntley discussed new hire orientation and stated that it would only include "a drug screen and pre-employment physical." Filing 43-1 at 48. The handbook does not clarify whether the required "screening" refers to a medical evaluation, a physical assessment, or possibly both. Nor did any written correspondence state that a medical evaluation and a physical assessment that may require a doctor's note would both be required for employment. Watts and Fallick did both testify that there were set standards for a physical assessment for their employees, and a document used by Concentra physical therapy to assess Watts Electric employees was provided outlining those standards. Filing 43-1 at 21, 31, & 65. However, it is disputed whether Huntley had any knowledge that this assessment was required for his employment. And, most directly, Huntley testified that he never "refused" to complete an additional physical examination. Thus, there are genuine issues of material fact regarding Watts Electric's claim that it separated from Huntley because he refused to complete a condition of employment.

FAILURE TO ACCOMMODATE

Huntley additionally claims that Watts Electric failed to make a reasonable accommodation for his employment.

To support a failure to accommodate claim, the plaintiff must establish both a prima facie case of discrimination based on disability and a failure to

accommodate it. *Kelleher v. Wal-Mart Stores, Inc.,* 817 F.3d 624, 631 (8th Cir. 2016). If a party makes a reasonable accommodation claim, the Court then applies a modified burden-shifting analysis. Under this approach, the employee still must make a facial showing of all the elements of a prima facie case, but in some instances the employer may be required to show that it was unable to accommodate the employee. *Dick,* 826 F.3d at 1060. To defeat a summary judgment motion, an employee only needs to show that an accommodation seems "reasonable on its face." *US Airways, Inc. v. Barnett,* 535 U.S. 391, 391 (2002). The employer would then need to show that the particular circumstances would create an undue hardship. *Id.*

The basis for Huntley's failure to accommodate claim, however, is unclear. The accommodation that Huntley says he seeks is "the opportunity to work" and "the opportunity to provide medical documentation or access to his physicians." Filing 46 at 34. However, Huntley also claims that his back condition did not create any work limitations and he could perform all the essential functions of the job without accommodations. Filing 46 at 30.

Accommodations should meet an individual's disability related needs. *US Airways,* 535 U.S. at 400. An accommodation sought is unreasonable if there is no causal connection between the accommodation and the limitations of the disability. *Wood v. Crown Redi-Mix, Inc.,* 339 F.3d 682, 687 (8th Cir. 2003). The Court doubts whether "the opportunity to work" is an accommodation at all. The opportunities to work or provide documentation are not related to any disability-related needs. Because Huntley claims to have no work limitations, the opportunity to provide medical documentation cannot be causally connected to a limitation, and is, thus, not a reasonable accommodation within the meaning of the ADA.

Reassignment to another position, however, can be a reasonable accommodation. *See Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1018 (8th Cir. 2000). And there is a dispute as to whether reassignment was offered. Watts Electric claims they acted in good faith by offering an accommodation of potential employment in other available positions within Watts Electric at the same seniority level. Filing 47-3 at 26, 31. Huntley, however, testified that they never discussed alternative positions with Watts Electric. Filing 43-1 at 7.

But Huntley also never claims to have sought or even inquired about alternative positions with the company. He states that "the only accommodation [he] ever asked for was the opportunity." Filing 46 at 34. And to determine necessary accommodations, the employer and employee must engage in an "interactive process." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906. (8th Cir. 2015). This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability. *Id.* Huntley does not present evidence to suggest that he alerted Watts Electric of a need for an accommodation related to his limitations, especially considering that he also claims to not have any limitations that require accommodation.

In other words, Huntley's position was that he could do the job of an apprentice lineman, and what he asked for wasn't an accommodation for any disability—rather, it was the opportunity to demonstrate that he could do the job of an apprentice lineman without accommodations. Huntley does not present sufficient evidence to create a genuine issue regarding whether he alerted Watts Electric of the need for an accommodation for a disability-related limitation, or whether a reasonable accommodation even exists without a

limitation. Thus, a rational trier of fact could not find that Watts Electric failed to accommodate his disability.

CONCLUSION

For the reasons explained above, the Court will grant Watts Electric's motion for summary judgment in part and deny it in part. Specifically, the Court will deny Watts Electric's motion with respect to the general claim of disability discrimination. But the Court will grant Watts Electric's motion for summary judgment with respect to Huntley's failure to accommodate claim.

IT IS ORDERED that Watts Electric's motion for summary judgment (filing 41) is granted in part and denied in part as set forth above.

Dated this 13th day of July, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge